# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr><td>

BANK HAPOALIM B.M.,

                  Plaintiff,

    v.

ALLSTATE SALES GROUP INC., *et al.*,

              Defendants.

</td><td>

Civil Action No. 25-18047 (GC) (JTQ)

**<u>MEMORANDUM ORDER</u>**

</td></tr>
</table>

**THIS MATTER** comes before the Court upon the Motion of Plaintiff Bank Hapoalim B.M. (BHI) for the appointment of Province Fiduciary Services, LLC, by and through Thomas Buck (Receiver), as receiver over certain real and personal property assets of Defendants Allstate Sales Group Inc. (ASG), Ocean Properties LLC, Ocean Investment Holdings LLC, Ocean Property Management LLC, Ocean Property Management II LLC, Home Services USA LLC, and Aegis Service Group LLC, who consent to the appointment of a Receiver.  (ECF No. 3); and

**WHEREAS** BHI filed a Complaint in federal court on December 1, 2025, asserting claims of breach of contract, foreclosure on and enforcement of security interest, and mortgage foreclosure against Defendants.  (ECF No. 1 ¶ 3.)  BHI alleges that it is a senior secured, asset-based creditor of Defendants and that it holds a first-priority security interest in and lien on "substantially all of the Defendants' assets."  (*Id.* ¶ 2.)  The Complaint includes as attachments: (1) a Loan and Security Agreement dated April 20, 2022, by and among BHI and Defendants (the Loan Agreement) (*see* ECF No. 1-1); (2) a Forbearance Agreement and Amendment No. 4 to the Loan and Security Agreement dated April 18, 2025, by and among BHI and Defendants (the Forbearance Agreement) (*see* ECF No. 1-2); and (3) several notes containing acceleration and cross-default provisions by which Defendant Ocean Properties, pursuant to the Loan Agreement,

granted security interests in real estate it owned to BHI (the Real Estate Term Loan Notes) (*see* ECF Nos. 1-3 to 1-8); and

**WHEREAS** BHI's Complaint states that through the aforementioned documents, and pursuant to the Loan Agreement and related loan documents, Defendants granted BHI a security interest in, among other things, all Accounts, Books and Records, cash and cash equivalents, Chattel Paper, Commercial Tort Claims, Commodity Accounts, Deposit Account and all funds on deposit therein, Documents, Electronic Chattel Paper, Equipment, Equity Interests, General Intangibles, Goods, Instruments, Inventory, Investment Property, Letter-of-Credit Rights, Proceeds of the foregoing property, and the real estate specified in the Real Estate Term Loan Notes (collectively, the Collateral).  (ECF No. 1 ¶ 17; *see also* ECF No. 1-1 at 69); and

**WHEREAS** BHI's Complaint states that it properly perfected its security interest in the Collateral by timely filing a UCC-1 financing statement in each appropriate jurisdiction, which it attached as an exhibit to the Complaint.  (*Id.* ¶ 18.)  The mortgages were duly recorded, perfecting BHI's security interests in the real estate in each of the aforementioned Real Estate Term Loan Notes.  (*Id.* ¶ 19.)  BHI believes its security interest in the Collateral is prior to any other security interest.  (*Id.* ¶ 20); and

**WHEREAS** the Real Estate Term Loan Notes provide for the appointment of a receiver upon default.  The appointment of a receiver upon default is included in: (a) Section 8.1(g) of the Mortgage, Assignment of Leases and Rents, Fixture Filing and Security Agreement associated with the New Jersey Note (ECF No. 1-4 at 19); (b) Section 18(a)(vii) of the Deed to Secure Debt, Assignment of Leases and Rents and Security Agreement associated with the Georgia Note (ECF No. 1-6 at 18); and (c) Section 8.1(g) of the Mortgage, Assignment of Leases and Rents, Fixture Filing and Security Agreement associated with the South Carolina Note (ECF No. 1-8 at 29); and

**WHEREAS** BHI alleges that Defendants defaulted on the Real Estate Term Loan Notes and, later, defaulted under Sections 12.1(a) and 12.1(b) of the Loan Agreement. (*Id.* ¶¶ 21-26); and

**WHEREAS** Defendants ceased operations and terminated their employees on September 4, 2025. (ECF No. 3 at 2); and

**WHEREAS** BHI now seeks an appointment of a receiver "over BHI's secured collateral held by the Defendants during the pendency of this case to protect its interests in the Collateral and to maximize the possibility of recovering the sums owed to it by the Defendants." (*Id.* at 1.) BHI argues that the Collateral is at "risk of immediate dissipation and irreparable harm" and that there is "an imminent risk of theft and loss to the equipment [and] assets[.]" (*Id.* at 3.) According to BHI, the cease in operations may give rise to "litigation or setoff claims by ASG's customers" and will "prevent the collection of receivables," the latter of which is a "significant part of BHI's Collateral base." (*Id.* at 2-3.) Moreover, BHI states that certain of the Collateral, such as machinery and equipment, "must be secured to prevent further loss, theft, or damage" because "appropriate security" may not be in place to safeguard "easily movable equipment, machinery, and vehicles," which may "dissipate another source of recovery for creditors." (*Id.*); and

**WHEREAS** BHI avers that "Defendants are in default under their loan agreements with Plaintiff with a combined current outstanding principal balance of approximately $21.4 million." (*Id.* at 2); and

**WHEREAS** Defendants do not oppose the appointment of a receiver and consent to BHI's Motion and Proposed Order. (ECF No. 7); and

**WHEREAS** the Court held an in-person hearing on this Motion on January 22, 2026, with counsel for Plaintiff and Defendants present (ECF No. 25); and

**WHEREAS** "Federal Rule of Civil Procedure 66 empowers a federal court to appoint a receiver in a pending litigation." *Wells Fargo Bank, N.A. v. Lichter Gateway IV, LLC*, Civ. No. 17-2036, 2017 WL 5957072, at *5 (D.N.J. Dec. 1, 2017); *see also* 28 U.S.C. § 754.  However, the appointment of a receiver is a "drastic" and "extraordinary" remedy.  *Id.* (citing *Leone Indus. v. Associated Packaging, Inc.*, 795 F. Supp. 117, 120 (D.N.J. 1992), and *Maxwell v. Enter. Wall Paper Mfg. Co.*, 131 F.2d 400, 403 (3d Cir. 1942)).  A court must take caution when exercising this power. *Id.*; *see also* 12 Wright, Miller, Kane & Marcus, Federal Practice and Procedure, § 2983 (2d ed.) ("The appointment of a receiver is considered to be an extraordinary remedy that should be employed with the utmost caution and granted only in cases of clear necessity to protect plaintiffs interests in the property."); and

**WHEREAS** "A receiver is often appointed upon application of a secured creditor who fears that his security will be wasted." *Pusey & Jones Co. v. Hansen*, 261 U.S. 491, 497 (1923);[1] and

**WHEREAS** there is no precise formula for determining when a receiver should be appointed,[2] but courts in the District of New Jersey "uniformly require" demonstration of at least three factors: (1) "an equitable interest in the property to be seized or . . . judgments that cannot otherwise be satisfied," (2) "imminent danger of [the] property being lost, injured, diminished in

---

[1]     Courts in this district generally apply federal law to a motion to appoint receiver in federal diversity actions such as this one. *See Fimbel v. Fimbel Door Corp.*, Civ. No. 14-1915, 2016 WL 1379788, at *2 (D.N.J. Apr. 7, 2016) (collecting cases).  Moreover, BHI's brief states that federal law should apply.  (ECF No. 3 at 4 ("In a diversity case, such as this, the appointment of a receiver is a procedural matter governed by federal law and equitable principles.").)  As such, the Court applies federal law.

[2]     *See, e.g., Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009) ("[T]here is 'no precise formula for determining when a receiver may be appointed.'" (citation omitted)).

value or squandered," and (3) "[that other] legal remedies are inadequate."[3] *Fimbel v. Fimbel Door Corp.*, Civ. No. 14-1915, 2016 WL 1379788, at *3 (D.N.J. Apr. 7, 2016) (quoting *Leone Indus. v. Associated Packaging, Inc.*, 795 F. Supp. 117, 120 (D.N.J. 1992)); and

**WHEREAS** courts in this district have also considered additional factors used in Pennsylvania according to the Court's discretion. *See, e.g.*, *id.* Those factors include: "(1) the probability of the plaintiff's success in the action; (2) the possibility of irreparable injury to the plaintiff's interests in the property; (3) the inadequacy of the security to satisfy the debt; (4) the probability that fraudulent conduct has occurred or will occur to frustrate the plaintiff's claim; (5) the financial position of the debtor; (6) the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (7) the inadequacy of available legal remedies; (8) the lack of a less drastic equitable remedy; and (9) the likelihood that appointing a receiver will do more harm than good." *Id.*; and

**WHEREAS** here, each of the New Jersey factors are met, and the Pennsylvania factors also counsel in favor of the appointment of a receiver. Beginning with the New Jersey factors, first, BHI has established that it has an interest in the property to be seized, as it has submitted evidence of its perfected security interest in the Collateral. (*See* ECF No. 1-9.) Therefore, any diminished value of the Collateral would result in an imminent loss to BHI. *See Fimbel*, 2016 WL 1379788, at *4 (finding this factor met where the plaintiffs, as shareholders, had equitable interests in the value of the defendant's stock, and that diminishment of defendant's assets would thus result in an "immediate loss" to the plaintiff). Second, at the hearing before the Court, BHI demonstrated

---

[3]    BHI's briefing focuses on factors considered in *Wells Fargo Bank, N.A. v. CCC Atlantic, LLC*, 905 F. Supp. 2d 604 (D.N.J. 2012). The Court instead uses factors as discussed in *Fimbel*, which is published later and which considered *CCC Atlantic* in rendering its decision. *See* 2016 WL 1379788, at *2 (citing *CCC Atlantic*).

that the Collateral is in imminent danger of being lost, damaged, diminished in value, or squandered. BHI noted in its briefing that the value of Defendants' properties "continue[s] to diminish absent the appointment." (ECF No. 3 at 7.) Moreover, BHI notes that "appropriate security" may not be in place to "safeguard easily movable equipment, machinery, and vehicles," which "may dissipate another source of recovery for creditors" absent intervention. (*Id.* at 3.) As such, there are "serious questions" as to whether BHI's loans will ever be repaid. *Fimbel*, 2016 WL 1379788, at *5 (finding imminent danger existed where indicators suggested that debts could not be repaid). Third, BHI lacks an adequate remedy at law, as the Collateral may be destroyed or depleted before BHI can obtain a legal judgment.

Taken together, an equitable intervention is warranted under the factors considered by New Jersey district courts; and

**WHEREAS** consideration of the factors used by Pennsylvania district courts to assess whether to appoint a receiver counsels further in favor of appointment. At the hearing before the Court, Defendants did not contest that they are in default of the BHI agreements and consented to the appointment of a receiver. Therefore, it is likely that BHI will prevail on its breach of contract claim arising from Defendants' default on the Loan Agreement. (*See also* ECF No. 3 at 7 (arguing same).) In addition, Defendants are financially unstable. As set forth during the hearing, Defendants have failed to make payments due to BHI under their various agreements, and the company has ceased all operations. As such, BHI avers that "Defendants are no longer generating revenue to repay their creditors, including BHI." (ECF No. 1 at 7.) Given Defendants' liability and their inability to protect any remaining collateral, the Court finds that appointing a receiver to preserve Defendants' assets is in the best interest of BHI and other creditors.

Taken together, these factors counsel in favor of appointment of a receiver; and

6

**WHEREAS** for the reasons set forth on the record at the hearing held on January 22, 2026, and for other good cause shown,

**IT IS** on this 5th day of February 2026 **ORDERED** as follows:

1. The Motion (ECF No. 3) establishes sufficient grounds for the relief requested and based on the consent of Defendants, the Motion is **GRANTED** as set forth herein.

2. Until further order of this Court, Receiver is appointed as receiver of Defendants and all of the Receivership Property (defined below) to serve with the requirement of bond being waived. This receivership proceeding is hereinafter referred to as the "Receivership;" and the estate created in the Receivership and consisting of the Receivership Property is hereinafter referred to as the "Receivership Estate."

3. Province and its support staff, as well as Receiver's Professionals (defined below) are entitled to reasonable compensation and expense reimbursement from the Receivership Estate on a monthly basis. Province is authorized to receive payment of compensation from the Receivership Estate based upon the following rates:

   a. $50,000 monthly Receiver Fee (in consideration of Thomas Buck's time), to be paid and earned upon receipt on the first day of each calendar month during the term of the Receivership Estate or until Receiver's termination, resignation, or removal by the Court, which such termination, resignation, or removal may be warranted upon Receiver's willful failure to adhere to the terms and conditions contained in this Order.

   b. Support Staff of Province (not inclusive of Thomas Buck) shall bill the Receivership Estate based on its then-current market hourly rates, in one tenth of an hour increments, as follows:

| LEVEL | PER HOUR (USD) |
| --- | --- |
| Managing Directors and Partners | $850-$1,450 |
| Vice Presidents, Directors, and Senior Directors | $700-$1,050 |
| Analysts, Associates, and Senior Associates | $350-$825 |
| Other / Para-Professional | $270-$450 |

The hourly rates for the Support Staff currently contemplated for this engagement range from $350-$650 USD per hour.

c. Total fees, inclusive of the Receiver Fee, shall be capped at $95,000 USD per month (the "Receiver Fee Cap"); provided, however, Province can apply any prior monthly overage to months where fees are below $95,000. The Court may authorize an increase, on the one hand, or decrease, on the other hand, in the Receiver Fee and/or the Receiver Fee Cap after notice and a hearing to the extent necessary to avoid manifest injustice or if the scope of the Receivership expands or narrows, respectively, provided that parties are given appropriate notice and an opportunity to be heard. The Receiver Fee Cap and the compensation of the Receiver's Professionals shall at all times be subject to subsection (h) of Local Civil Rule 66.1 (the "Local Rule"), and the Court may adjust the Receiver Fee Cap and/or the fixed compensation of the Receiver's Professionals as may become appropriate to comply with the Local Rule after notice and a hearing.

4. In addition, Receiver shall be entitled to reimbursement for all reasonable out-of-pocket expenses incurred in connection with its services.

5. The Receiver's fees, expenses, and operating expenses, including the fees and expenses of the Receiver and his Professionals, shall be paid subject to Paragraph 6 hereof and in accordance with a 13-week budget acceptable to the Plaintiff and the Court (together with

all updates, amendments, and supplements thereto, the "Budget"). The Budget shall be updated on a monthly basis. Each Budget shall, after being submitted to and approved by Plaintiff, be filed with the Court on seven (7) days' notice to Plaintiff, Defendants, and any other persons filing a formal notice of appearance in this proceeding. If an objection to the Budget is interposed, or if the Court has any questions or concerns regarding the Budget, the Court shall schedule a hearing to resolve the objection or address the Court's questions or concerns, respectively; *provided however*, the Receiver shall be permitted to operate in accordance with the proposed Budget until such time that the Court has approved the Budget (including as the same may be revised to address any objection or Court question or concern). The Receiver shall complete an initial proposed Budget and, once approved by Plaintiff, file it with the Court within 14 days of this Order.

6.

    a.    Plaintiff asserts that any and all cash of the Defendants, including cash and other amounts on deposit or maintained in any bank account or accounts of the Defendants and any amounts generated by the collection of accounts receivable or other disposition of Plaintiff's Collateral existing as of the commencement of the Receivership or arising or acquired after the commencement of the Receivership, together with all proceeds of any of the foregoing, is cash Collateral of Plaintiff. Plaintiff shall retain liens and security interests in any and all existing and after arising Receivership Property, including, without limitation, all cash proceeds of Receivership Property, of the same kind, category and character that Plaintiff held a perfected lien against as of the commencement of the Receivership, in the same nature, extent, priority, and validity that such liens existed as of the

commencement of the Receivership. For the avoidance of doubt, Plaintiff shall retain such liens and security interests in any and all cash proceeds of Receivership Property generated by the Receivership Estate, regardless of whether such cash is held on deposit in a BHI bank account or any non-BHI bank account with respect to which BHI does not have a control agreement with the bank at which such account is maintained.

b. Upon the entry of this Order, the Receivership Estate shall open a new bank account at a bank other than BHI (the "Collections Account") that is FDIC-insured for receipt of third-party collections and the Receivership Estate shall open a new bank account at a bank other than BHI (the "Operating Account") for protective advances from BHI and disbursement of Receivership expenses. The Plaintiff shall cease sweeping funds and shall facilitate the transfer of any existing funds to the Operating Account for administration of case. To the extent there is not sufficient cash in the Operating Account, Plaintiff will provide protective advances for the payment by the Receiver of any outstanding fees, expenses, and operating expenses of the Receivership Estate in accordance with the Budget or as otherwise ordered by the Court; provided, however, the Receiver shall make any such funding request at least three business days prior to the time that any outstanding fees, expenses, and operating expenses are sought to be paid by the Receiver; provided further, however, that Plaintiff shall not be required to make protective advances for any fees or expenses that are not set forth in the Budget. Upon reasonable funding request by the Receiver, Plaintiff may make protective advances for fees and expenses that are not set forth in the Budget. Any protective

advances made by Plaintiff shall not be subject to the interim distribution mechanism set forth in subsection (d) of this paragraph and shall be repaid by the Receiver in full promptly when funds become available and without the need for further Court order. Upon entry of this Order, Plaintiff will make a protective advance of $52,150 to the Receivership Estate to bind D&O insurance for Receiver. The Receiver need not obtain Court approval prior to the disbursement of Receivership funds from the Operating Account for expenses in the ordinary course of the administration and operation of the Receivership, which expenses shall include, without limitation, reimbursement to Plaintiff of any advances made by Plaintiff to Receiver to fund expenses set forth in the Budget.

c.  On or before the tenth (10th) day of each month, the Receiver shall provide Plaintiff and Defendants with an accounting, for the preceding month, of (i) collections of proceeds of Receivership Property, by category of collateral (e.g., real property, equipment, and accounts receivable), and (ii) expenses paid.

d.  On or before the twentieth (20th) day of each month following the month for which a distribution is sought, based on the information provided by the Receiver in subsection (c) above, the Plaintiff shall file a monthly (for the previous month) statement (the "Monthly Distribution Statement") seeking a distribution to Plaintiff from proceeds of Receivership Property other than accounts receivable (and with respect to accounts receivable, distribution will be subject to a separate application as set forth herein in subsection (e)). The Monthly Distribution Statement shall be filed with the Court on fourteen (14) days' notice to Receiver, Defendants, and any other persons filing a formal notice of appearance in this

11

proceeding. Any objection to the Monthly Distribution Statement must be in writing, filed with the Court, and set forth the nature of the objection and the amount at issue. If no objection to the Monthly Distribution Statement is filed in the fourteen (14) day notice period (the "Objection Deadline"), then the distribution sought by the Monthly Distribution Statement shall be deemed approved.  Upon the expiration of the Objection Deadline, the Receiver shall promptly pay Plaintiff an amount (the "Interim Payment") equal to the lesser of (i) ninety percent (90%) of the distribution requested in the Monthly Distribution Statement, or (ii) one-hundred percent (100%) of the requested distribution not subject to any objection. If an objection to the Monthly Distribution Statement is filed and the Plaintiff, Receiver, and respective objecting party are able to resolve the objection, the Receiver shall file a statement indicating that the objection is withdrawn and describing the terms of the resolution, and the Receiver shall promptly pay Plaintiff that portion of the Monthly Distribution Statement which is no longer subject to an objection. If Plaintiff, Receiver, and the respective objecting party are unable to reach a resolution of the objection within fourteen (14) days after service of the objection, then Plaintiff may either (a) file a response to the objection with the Court together with a request for payment of the difference, if any, between the Interim Payment and the objected-to portion of the requested distribution (the "Incremental Amount"); or (b) forego payment of the Incremental Amount until the next interim or final application or any other date and time so directed by the Court at which time it will consider and dispose of the objection, if so requested.

e.  In addition to the foregoing, Plaintiff shall have the right to seek to receive, and Receiver shall have the right to seek to distribute to Plaintiff, as applicable, payment for all amounts previously collected by Receiver but not paid or distributed to Plaintiff, including, without limitation the balance of the distribution sought by Plaintiff in filed Monthly Distribution Statements deemed approved and not yet paid and proceeds of Defendants' accounts receivable, as part of a final distribution in this action or such earlier date that is approved by the Court. Distribution applications filed under this Section 6(e) shall follow the same objection and approval procedure as applications under Section 6(d).

7.  Notwithstanding the foregoing, Plaintiff expressly agrees that its liens and security interests shall be subject to a carve-out from its Collateral for: (i) the payment of the reasonable fees and expenses of the Receiver subject to and limited by the Budget (the "Receiver Carve-Out"), and (ii) the reasonable professional fees and expenses of the Receiver's counsel and any other Professionals retained by the Receiver with Court approval subject to and limited by the Budget (the "Professional Carve-Out"). Plaintiff agrees and consents to the use by the Receiver of Cash Collateral: (i) for the payment of the Receiver Carve-Out; and (ii) for the payment of the Professional Carve-Out. The Receiver Carve-Out and Professional Carve-Out shall constitute super-priority liens on all Receivership Property, senior to any existing liens or claims, and shall be used solely to pay the fees and expenses of the Receiver and his Professionals as approved by the Court. These Carve-Out funds shall not be available to any other creditor until the full payment of the allowed fees and expenses of the Receiver and his Professionals.

13

8. Upon the reasonable request by Plaintiff, and at Plaintiff's expense, Receiver shall promptly provide Plaintiff any and all documentation or information relating to the Collateral of Plaintiff that is reasonably available to the Receiver, including, without limitation, accounts receivable and real and personal property.

## I.    General Powers and Duties of Receiver

9. The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the directors, officers, and managers of the Defendants under applicable state and federal law, by the governing charters, bylaws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, Fed. R. Civ. P. 66, and the Local Rule.

10. No person holding or claiming any position of any sort with the Defendants shall possess any authority to act by or on behalf of the Defendants.

11. Effective on the date of the entry of this Order (the "Effective Date"), Receiver is authorized to: (i) take possession, custody and control of the Receivership Property, subject to all existing liens, claims, and encumbrances; and (ii) perform all acts reasonable and necessary to manage, protect, and preserve the Receivership Property, without further order of the Court. As used in this Order, (a) "Property" means any legal, equitable or beneficial interest in, right to, or claim to any real and personal property, including, without limitation, funds, vehicles, boats, certificates of title, accounts with any Financial Institution (defined below), chattels, choses in action, chattel paper, claims, causes of action against other persons or entities, goods, instruments, equipment, fixtures, general intangibles, electronically stored information, leaseholds, mail or other deliveries,

14

inventory, checks, notes, accounts, credits, contracts, receivables, shares of stock,
membership interests in any limited liability company, partnership interests, inheritances,
options, contractual rights, interests in any trust, art, collectibles, furnishings, jewelry,
personal effects and all cash or money, wherever located, and (b) "Receivership
Property" means Property of any and every kind whatsoever that is (i) owned, controlled
or held by or for the benefit of any Defendant, in whole or in part; (ii) in the actual or
constructive possession of any Defendant, or other individual or entity acting in concert
with any Defendant; (iii) held by an agent of any Defendant, including as a retainer for
the agent's provision of services; or (iv) owned, controlled or held by, or in the actual or
constructive possession of, or otherwise held for the benefit of, any entity directly or
indirectly owned or controlled in whole or in part by any Defendant.

12. Without limiting the foregoing, but subject to the Budget, the Receiver shall have the
following general powers and duties:

    a.  To use reasonable efforts to determine the nature, location and value of all
Receivership Property;

    b.  To use reasonable efforts to take immediate custody, control and possession of all
Receivership Property and records relevant thereto from the Defendants;

    c.  With respect to the Receivership Property that is real property, to enter upon and
take immediate possession of the real property, and demand, collect and receive
the rents, income, revenues, proceeds and profits derived from tenants at the
property, their sublessees or any occupants in possession thereof. The Receiver
may access and use office equipment at the real property used by Defendants or
its property manager, including computer equipment, software programs and

passwords, to the extent that such equipment was acquired and/or is owned by Defendants;

d.  To operate, manage and lease the Receivership Property that is real property, and to market such property for lease and/or for sale, or to retain a reputable and experienced management company (including, but not limited to, an affiliate of the Receiver), maintenance personnel, broker, leasing agent and/or marketing agent to operate, manage and lease the property, and to market the property for lease and/or for sale, without further order of this Court, but with the consent of BHI, at competitive rates plus reimbursement of its reasonable and necessary out-of-pocket expenses provided, however, that no Receivership Property that is real property shall be sold or transferred without prior order of this Court authorizing such sale or transfer;

e.  To sue for and collect, recover, receive and take into possession from third parties all Receivership Property and records relevant thereto;

f.  To take any action which, prior to the entry of the Order appointing the Receiver, could have been taken by the officers, directors, partners, managers, trustees, and agents of the Defendants;

g.  To retain and pay professionals (e.g., accountants, attorneys, financial or business advisers, appraisers, investment bankers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers (collectively, "Professionals"); provided, however, that the definition of Professionals as used in this Order shall not include current or former officers, directors, employees, agents, managers, or other personnel of Defendants) to advise and assist Receiver with respect

to management, operation, or disposition of the Receivership Property and to protect and preserve the interest and rights of Receiver in fulfilling his duties hereunder, including, without limitation, Professionals that are currently or have previously been engaged by Defendants; with such retention to be retroactive to the date of the Complaint and with respect to proposed counsel to the Receiver to October 29, 2025;

h.  To retain and pay current or former employees, agents, managers, or other personnel of Defendants to advise and assist Receiver in performing his duties hereunder;

i.  To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

j.  To issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

k.  To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

l.  To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estate;

m.  To maintain current insurance policies or procure new insurance policies;

n.  To collect, receive, sue for, and compromise all accounts receivable, earnings, rents, issues, income, profits, and other revenues and contractual claims that

constitute or relate to the Receivership Property (the "Revenues") now due and unpaid and that become due during the Receivership;

o. To file voluntary bankruptcy petitions on behalf of any Defendants with the consent of Plaintiff;

p. To assume control over, operate, and/or wind down the business of Defendants in such manner, to such extent, and for such duration as Receiver may deem necessary or appropriate, if at all, and pursue and preserve all of Defendants' claims or interests as Receiver deems to be in the best interest of the Receivership Estate in Receiver's business judgment;

q. To enter into and reject contracts and leases;

r. To take and have complete and exclusive control over Defendants' bank accounts (and all balances and funds therein), maintain and utilize the Collections Account and the Operating Account (which shall be used exclusively for deposits and disbursements of the Revenues and funds of the Receivership Estate), or to open one or more new deposit accounts as Receiver and Plaintiff may agree in writing and direct payors to deposit funds due and owing to Defendants in such deposit accounts;

s. To obtain any and all financial records, statements, and other documents pertaining to Defendants from any bank, credit union, savings and loan association, insurance company, or other financial institution (collectively, the "Financial Institutions") (and all Financial Institutions are hereby directed to deliver to Receiver all such financial records, statements, and other documents pertaining to Defendants as requested by Receiver); and

t.  To take all other actions as may be deemed advisable or appropriate to carry out the duties, powers, and authorizations granted to Receiver or to maximize the value of the Receivership Property.

13. The Receiver is not responsible or liable for the preparation of any tax returns nor payment of any tax liabilities that arose prior to the Receivership; provided, however, the Receiver is authorized and directed to timely pay all tax obligations of the Receivership Estate (including payroll taxes and sales/use taxes) that accrue during the Receivership, as these are necessary expenses of preserving the Receivership Estate. The Receiver's compliance with this provision shall satisfy any 'responsible person' duty under applicable tax law, and the Receiver shall not incur personal liability for any tax liabilities of Defendants that arose prior to the Receivership, including trust fund taxes incurred prior to the Receivership.

14. On the Effective Date, Defendants (and, where applicable, Defendants' officers, shareholders, directors, partners, assigns, agents, servants, employees, accountants, and attorneys), all persons and entities claiming by or through Defendants, and all other persons and entities shall:

a.  surrender possession of all of the Receivership Property to Receiver, of whatever nature and wherever located, whether such Receivership Property is in the possession of Defendants or any affiliate of Defendants, or any of their officers, directors, partners, shareholders, representatives, professionals, employees, or agents, or any other person or entity, and all of such Receivership Property shall be, on the Effective Date, placed in custodia legis of the Court;

b.  immediately provide access, means of access, and make available to Receiver all account signatory access, keys, codes, passwords, books, records, computer hardware and software (including all computer programs, data bases, disks, and other media owned or licensed by Defendants or upon which information regarding the property, assets, accounts, and businesses of Defendants are stored, recorded, or located), mail, email, and other correspondence addressed to or which may contain information regarding the Receivership Property and affairs of Defendant; provided, however, that to the extent Receiver seeks access to such mail, email and other correspondence by parties other than Defendants, the obligation of such parties to produce shall be subject to any and all applicable privileges;

c.  immediately disclose to Receiver the nature, amount, and location of any and all Receivership Property, including, books, records, computer programs, and media owned by Defendants or connected with businesses of Defendants, and shall immediately turnover to Receiver all Receivership Property forthwith; and

d.  cooperate with Receiver and abide by Receiver's requests for information and documentation so that Receiver may perform Receiver's function with full information and knowledge.

15. The Receiver, solely in his capacity as Receiver or through his associates, employees, agents and independent contractors is authorized, but not directed to take the following specific actions:

a.  Physical Asset Inspection and Validation

b.  Review of Asset Security Measures

   c.   Patrol and Guard Services Assessment

   d.   Ascertain Real Estate and/or Personal Collateral and Develop Sale Strategy

   e.   Financial Data Review – Accounts Receivable

      i.   Gain access to financial records and

         1.   Preserve a copy/image of the current data.

         2.   Determine the system software and hardware necessary to operate.

         3.   Identify any special skills or personnel necessary to manage/operate systems.

      ii.   Determine means necessary to maintain system in current environment.

     iii.   Review the latest accounts receivable (A/R) aging report.

     iv.   Assess A/R quality with focus on:

         1.   Top customers by outstanding balance.

         2.   Days Sales Outstanding (DSO).

         3.   Credit concentration risks.

         4.   Disputed or delinquent accounts.

     v.   Confirm that receivables are:

         1.   Clearly recorded

         2.   Appropriately reconciled

     vi.   Speak with Defendants and any other persons regarding the Collateral.

    vii.   Work with customers and third-party carriers to complete contracts in process and minimize setoff claims against receivables.

   viii.   Communicate with customers and facilitate collection of receivables.

**II.    <u>Access to Real and Personal Property</u>**

16. The Receiver is authorized to take immediate possession of and secure all premises owned, rented, leased, and otherwise controlled by Defendants, wherever located. Upon receiving actual notice of this Order by personal service, email, mail, facsimile transmission, or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties or tenants under a lease with Defendants, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing or erasing anything on such premises.

17. In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above. The Receiver shall have exclusive control of the keys. The Defendants, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

18. The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Defendants, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

19. Despite the foregoing, this Order does not transfer ownership of any Receivership Property or any Defendant to the Receiver. The Receiver is an officer of the Court and shall not be deemed an owner or operator of the business or assets of Defendants, nor a successor employer of Defendants, for any purpose. The Receiver is not a successor to any of the Defendants and shall not have successor liability with respect to any pending or future claims against Defendants. All employees of the Defendants shall be deemed to remain

employees of the Defendants (or the Receivership Estate) and shall not be considered employees of the Receiver for any purpose. The Receiver's oversight of operations is solely to preserve and maximize value; it does not render the Receiver, its support staff, or its agents as a business affiliate or successor of the Defendants.

### III.    Notice to Third Parties

20. The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, and managers of the Defendants, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

21. The Receiver is authorized to direct all persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Defendants to, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and his receipt for such payments shall have the same force and effect as if the Defendants had received such payment.

22. The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of any of the Defendants (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Defendants. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Defendants shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. Any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or

entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented or used by the Defendants. The Defendants shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

23. Within three (3) business days after entry of this Order, Receiver shall serve a copy of this Order on Defendants and any person of whom Receiver is aware that has or may claim to have a lien on or security interest in any of the Receivership Property. To the extent that the Receiver discovers the identity of additional such parties subsequently, Receiver shall serve a copy of this Order on such persons promptly. This Order may be served by personal delivery, United States First Class Mail, overnight delivery, or email. Service upon any branch or office of any Financial Institution or entity will effect service upon the entire financial intuition or entity.

### IV.    Injunction Against Interference with Receiver

24. Except by leave of this Court, Defendants and all persons receiving notice of this Order by personal service, email, mail, facsimile or otherwise, are enjoined, restrained, stayed, and prohibited from the following:

   a. interfering in any way with the Receiver's possession, custody, or control of any portion of the Receivership Property, including, without limitation, by transferring, conveying, concealing, or removing any Receivership Property, or in any manner with the exclusive jurisdiction of the Court over the Receivership Property;

   b. impeding or interfering in any manner with the exercise by the Receiver of his rights, powers, and duties hereunder; and

    c.   taking any other action that is inconsistent with the terms of this Order or the powers granted to the Receiver hereunder.

25. No person or entity shall commence an action or proceeding against the Receiver in his official capacity, or against agents or support staff acting on the Receiver's behalf, in any forum (except this Court) without prior order of this Court authorizing such action. Absent such leave, any such lawsuit or proceeding is prohibited and shall be void for lack of jurisdiction. This provision does not abrogate the requirements of 28 U.S.C. §959(a) (permitting certain actions for acts in carrying on business), but any such action must still be brought in a court of competent jurisdiction and in compliance with this Order.

26. Subject to payment for services provided, any entity furnishing water, electric, telephone, internet, communications, sewage, garbage or trash removal services to the Defendants shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

27. The Receiver shall promptly notify the Court of any failure of any person or entity to comply in any way with the terms of this Order.

## V.    <u>Sale of Assets</u>

28. Upon further Order of this Court approving such sale or disposition, pursuant to such procedures as may be required by this Court, the Receiver is authorized to market, sell or otherwise dispose of the Receivership Property, in its entirety or in one or more parcels (each, a "Disposition"), in each case free and clear of all mortgages, security interests, conditional sale or other title-retention agreements, pledges, liens, claims, judgments, demands, unrecorded easements, charges, restrictions of any kind, successor liability, alter ego or piercing corporate veil claims, transfer tax, bulk sales tax, mansion or any other

similar tax (collectively, "Interests"). All such Interests shall attach to the proceeds of a Disposition in the same priority, extent and amount as such Interests attached to the Receivership Property. The proceeds of any Disposition shall be disbursed by Receiver in accordance with this Order and further Order of this Court approving such disbursement.

**VI.    <u>Investigate and Prosecute Claims</u>**

29. The Receiver is authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, settle, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in his discretion be advisable or proper to recover and/or conserve Receivership Property.

30. The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by the Defendants.

31. The Receiver is granted leave, at any time after the Effective Date, to take written and oral discovery (including the issuance of subpoenas to any person) pursuant to the Federal Rules of Civil Procedure for the purpose of discovering the nature, location, status and extent of the Receivership Property. The Receiver may seek to compel the attendance of a person or entity for examination and/or production of documents in a manner permissible under the Federal Rules of Civil Procedure. Service on any party made pursuant to this section will be in accordance with the Federal and/or State Rules of Civil Procedure.

**VII.    <u>Liability of Receiver</u>**

32. The Receiver shall not be required to post bond or give an undertaking of any type in connection with the Receiver's appointment in this matter.

33. The Receiver may be sued only in his capacity as Receiver. Neither the Receiver nor his support staff nor Receiver's retained Professionals shall be liable for any claims of any nature whatsoever that arose prior to the date and time of the entry of this Order.

34. No individual or entity may commence any civil, administrative, or any other type of legal action against the Receiver or his support staff or Receiver's Professionals with respect to the Receivership Estate or this Order without first obtaining permission of the Court.

35. To the extent the Receiver decides to continue the services of any current employees, agents or other personnel with respect to the Receivership Estate, neither the Receiver nor his support staff or Receiver's Professionals shall be liable for any claims of any nature whatsoever of such employees, agents or other personnel that arose prior to the date and time of the entry of this Order, which claims include, but are not limited to, accrued but unpaid wages, benefit plans, payroll taxes, sick time, vacation time, overtime and/or any and all other liabilities related to unemployment and/or workers compensation claims.

36. During any period that real or personal property of the Receivership Estate is uninsured or underinsured as a result of actions or inactions of Defendants, including but not limited to Defendants' failure to secure liability, real and personal property insurance, neither the Receiver nor his support staff and Professionals shall be responsible for any claims arising from such deficiency.

37. Upon confirming that there is existing liability, real and personal property insurance or when the Receiver binds new liability, real and personal property insurance, the Receivership Estate, in the name of applicable Defendants, shall be named as a primary

insured party(ies) on existing insurance coverage for the Receivership Property, and Receiver is authorized to obtain and pay (in accordance with the Budget) the premiums for additional insurance for Defendants or for Receiver (including, without limitation, property and liability) for the Receivership Property.

38. The Receiver and his Professionals, acting within the scope of such agency, are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or his Professionals be liable to anyone, other than the Receiver, for their actions or omissions except upon an express finding by this Court that they acted as a result of malfeasance, gross negligence, or in reckless disregard of their duties.

39. Nothing contained in this Order, nor the grant or exercise of any powers provided for herein by the Receiver shall cause the Receiver to be considered a past or present owner, operator or other potentially responsible or liable party pursuant to any provision of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq.; the Hazardous Site Response Act ("HSRA"), O.C.G.A. § 12-8-90, et seq.; or incur liability based on ownership or operation of the Receivership Property pursuant to any other statutory, regulatory, common law or strict liability theory. Nor shall the Receiver be deemed an 'owner or operator' or responsible person under any state environmental statute, including but not limited to the New Jersey Spill Compensation and Control Act, N.J. Stat. § 58:10-23.11 et seq., or similar laws. Furthermore, to the extent hazardous substances, wastes or constituents are known or discovered to be present upon the Receivership Property, the Receiver shall not be considered to be in any direct or

indirect contractual relationship with any party responsible for such substances, wastes or constituents pursuant to CERCLA and/or HSRA, and shall instead be considered to be acting solely in a "fiduciary capacity" with respect to the Receivership Property, pursuant to 42 U.S.C. § 107(n) of CERCLA and §12-8-92(7)(C) of HSRA.

40. Nothing herein shall limit the immunity of the Receiver and his Professionals and their agents allowed by law or deprive the Receiver and his Professionals and their agents of indemnity for any act or omission for which they have immunity.

41. To the extent not covered by or in excess of Receiver's D&O insurance, the Receiver and his Professionals and their agents shall be indemnified by each of the Defendants except for malfeasance, gross negligence, willful misconduct, fraud, reckless disregard of duties, or breach of fiduciary duty determined by a final court order no longer subject to appeal, for all judgments, costs, and reasonable expenses including legal fees (which shall be paid out of the Receivership Estate after court approval as they arise) arising after the date and time of the entry of this Order, from or related to any and all claims of whatsoever type brought against any of them in their capacities as Receiver and his Professionals and their agents and acting in good faith compliance with any order, rule, law, judgment, or decree.

## VIII.   Recommendations and Reports

42. The Receiver is authorized, empowered and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property.

43. The Receiver will file an initial report of property and known liabilities on or before March 2, 2026. Starting on March 2, 2026 and every month thereafter until discharged (unless the

Court orders otherwise), Receiver shall file a report which shall list the receipts and disbursements made by Receiver and summarize the activities of Receiver during such period. The initial and monthly reports shall be served on counsel for the Defendants.

44. At the close of the Receivership, the Receiver shall file (i) a Final Accounting, (ii) the Receiver's proposed final distribution of any remaining proceeds of Receivership Property, and (iii) the Receiver's final application for compensation and expense reimbursement.

### IX.    Retention of Jurisdiction

45. This Court retains jurisdiction to enter such further orders that shall be necessary to carry out the terms and conditions of this Order including, but not limited to, any upward or downward adjustment deemed necessary by the Court to the Receiver Fee and/or Receiver Fee Cap. This Order is without prejudice to the right of BHI, the Receiver, or Defendants to make future applications to this Court by motion and upon notice to all parties for further, different or other authority as may be necessary in the Receiver's performance of his duties.

46. This Order shall be in full force and effect as of the Effective Date and there is no just cause for delay.


GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE